IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHERYL L. HUTCHINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-635-C |
| | ) | |
| CITY OF OKLAHOMA CITY, a | ) | |
| municipality; DENNIS PHILLIPS, | ) | |
| in his individual and official capacity | ) | |
| as Water Operations Supervisor; | ) | |
| JIM CRAWFORD, in his individual | ) | |
| and official capacity as Plant Manager; | ) | |
| and MONTE HANNON, in his | ) | |
| individual and official capacity as | ) | |
| Water Quality Superintendent, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl L. Hutchinson filed this suit on June 7, 2011, raising seven claims for

relief.  (Pl.'s Compl., Dkt. No. 1.)  After the dismissal stage, Plaintiff has three claims

remaining against both Defendant Dennis Phillips and Defendant City of Oklahoma City

("City"):  (1) Count IV, which alleges a violation of equal protection, brought pursuant to 42

U.S.C. § 1983; (2) Count V, which alleges a violation of the Equal Pay Act; and (3) Count

VI, which alleges negligent infliction of emotional distress.  Three claims also survive

against Defendant City alone:  (1) Count II, which alleges gender discrimination and

retaliation in violation of Title VII; (2) Count III, which alleges a hostile work environment

in violation of Title VII; and (3) Count VII, which alleges that Defendant City negligently

supervised, trained, and retained its employees.  Now before the Court is Defendant Dennis

Phillips's Motion for Summary Judgment (Dkt. No. 53) and Defendant City's Motion for

Summary Judgment (Dkt. No. 56).  For reasons more fully set forth herein, the Court now

GRANTS both Defendants' Motions in FULL.

## I. BACKGROUND

Plaintiff began working as a plant operator for the City of Oklahoma City at the

Draper Lake Water Treatment Plant ("Draper Plant") in 2004.  As a plant operator, Plaintiff

reported to a Chief Plant Operator ("CPO"), who in turn reported to the Water Operations

Supervisor ("WOS").  Defendant Dennis Phillips has served as Water Operations Supervisor

of the Draper Plant since September of 2006.  Jim Crawford, the Plant Manager, is the direct

supervisor of Dennis Phillips.  For all periods of time relevant to this action, a collective

bargaining agreement between the AFSCME union and the City of Oklahoma City governed

the terms of Plaintiff's employment, including her pay.  At all times relevant to this lawsuit,

Plaintiff has received the highest rate of pay authorized for plant operators by the collective

bargaining agreement.  Plaintiff is the only female employee at the Draper Plant.

Plaintiff first told Jim Crawford that available overtime was not being distributed

equally in March of 2008.[1]  On January 7, 2009, Plaintiff formally complained to the City's

"Ethics Hot Line" that Defendant Phillips had been improperly scheduling himself for

---

[1] At that time, the City had implemented an overtime equalization policy to fairly
distribute any available overtime hours among eligible employees.  Under the equalization
procedure, records were kept of how much overtime each employee actually worked.  In
addition, employees who turned down overtime when offered or who did not timely respond to
an offer of overtime were credited overtime hours.  When overtime became available, a
supervisor would contact the qualified employee with the lowest amount of credited overtime
hours and offer him or her the overtime.

overtime, falsifying the overtime equalization records, and going out to lunch once a week without clocking out and for longer than his allotted thirty-minute lunch break. Later that fall Plaintiff filed a grievance with the union,[2] again alleging that Defendant Phillips had falsified the overtime equalization records. Plaintiff's grievance also accused Defendant Phillips of denying Plaintiff the opportunity to work as an "acting CPO,"[3] denying her acting CPO pay for time worked in acting status, retaliating against her for filing her earlier complaint with the ethics committee, and creating a hostile work environment by making discriminatory and harassing statements. A hearing on Plaintiff's grievance was held February 24, 2010. As a result, management corrected the error in Plaintiff's pay and compensated her for the time she had worked as an acting CPO. However, the hearing officer found that "[t]here [was] no indication, other than the grievant's personal opinion, that the grievant was not afforded equal opportunities to work overtime. To the contrary, as one of the highest overtime earners, the grievant appears to have worked overtime more often than most of her male counterparts." (Def.'s City's Br., Dkt No. 56, Ex. 12, at 2.) Plaintiff filed her first charge of discrimination with the EEOC two months later, on December 18, 2009, alleging discrimination on the basis of her gender and violations of the Equal Pay Act.

---

[2] Plaintiff filed a grievance with the AFSCME in accordance with the dispute resolution procedure found in the collective bargaining agreement governing the terms of Plaintiff's employment. Plaintiff filed her grievance on October 19, 2009.

[3] Permanent CPOs must possess at least a Class "B" Water Treatment Operator Certification. In contrast, plant operators only need to have a Class "C" license. However, a plant operator can fill in for a CPO on a temporary basis, even if he or she only possesses a "C" license. This is known as working as an "acting CPO." If a plant operator works as an acting CPO for two or more shifts in a pay period, the plant operator receives higher CPO pay.

Specifically, Plaintiff accused Defendant Phillips of falsifying the overtime equalization records, denying Plaintiff the same acting CPO opportunities as the other workers at the Draper Plant, who were all male, and encouraging her supervisor to harass her about her work and her use of company equipment and facilities. Plaintiff filed a second charge with the EEOC on April 12, 2011, repeating her earlier claims that Defendant Phillips encouraged her CPO to harass her, denied her overtime and "acting CPO" opportunities, and falsified the overtime equalization records. Plaintiff also alleged that Defendant Phillips paid males with equivalent or lesser qualifications more than her when they worked in equivalent "acting" positions. Plaintiff then filed her Complaint on June 7, 2011.

## II. LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

## III. ANALYSIS

### A. Title VII

Counts II and III of Plaintiff's Complaint allege violations of Title VII of the Civil Rights Act of 1964 by Defendant City in the nature of gender discrimination, the creation of a hostile work environment, and retaliation. To prevent "'the pressing of stale claims,'" aggrieved employees must file a charge of discrimination with the EEOC within 300 days of the allegedly unlawful act. Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1163 (10th Cir. 2007) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982)); see also 42 U.S.C. § 2000e-5(e)(1). For discrete acts of discrimination, the 300-day time period begins running when an employee first learns of the disputed employment action. Almond v. Unified Sch. Dist. No. 501, 665 F.3d 1174, 1177-78 (10th Cir. 2011). Thus, the Court will only look at individual incidents of discrimination occurring on or after February 22, 2009—300 days before Plaintiff filed her first EEOC charge.[4] Courts apply a special

---

[4] Plaintiff contends that the Lilly Ledbetter Fair Pay Act of 2009 removes the 300-day rule from Title VII claims by "clarif[ying] that gender discrimination claim will accrue each time the employee receives compensation pursuant to gender based discriminatory practices." (Pl.'s Resp. to Def. City, Dkt. No. 66, at 12) (emphasis added).) However, Plaintiff misunderstands the Ledbetter Act. The Ledbetter act does not "work[] a near total revolution in how we measure

"ongoing violation" rule to hostile work environment claims because such "claims are different in kind from discrete acts," in that "[t]heir very nature involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  In Morgan, the Supreme Court held that all "the incidents constituting a hostile work environment are part of one unlawful employment practice;" thus, Plaintiff's claim is timely so long as at least one act contributing to the hostile work environment took place within Title VII's 300-day period. Id. at 118.  The Court will consider both actions within and outside the 300-day period so long as "'the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'"  Id. at 120 (citation omitted).

1.  Gender Discrimination:  Discrete Acts

    The McDonnell Douglas[5] burden-shifting framework applies when a plaintiff asserts a gender discrimination claim but cannot produce any direct evidence of discrimination. Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012).  Under McDonnell Douglas, Plaintiff has the initial burden of establishing a prima facie case of gender-based discrimination.  Id.  Plaintiff must demonstrate "(1) membership in a protected class and

---

time, with a new claim arising—and the limitations clock resetting anew—each time an employer issues a new paycheck reflecting or effecting an act of discrimination."  Almond, 665 F.3d at 1180.  Instead, "the Act applies only to claims alleging 'discrimination in compensation'—or, put another way, claims of unequal pay for equal work."  Id. at 1180 (emphasis added).  Plaintiff's Title VII claims allege gender discrimination, retaliation, and the creation of a hostile work environment, not that Plaintiff was paid less than her male co-workers for performing substantially the same work.

    [5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

(2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination."  Id.  If Plaintiff meets her burden, Defendant City must then articulate "a legitimate nondiscriminatory reason for its actions."  Id.  If the City does so, Plaintiff must "introduce evidence that the stated nondiscriminatory reason is merely a pretext for discriminatory intent."  Id.  Defendant City concedes that Plaintiff is a member of a protected class and therefore challenges only the second and third elements of Plaintiff's prima facie case.

Defendant City first argues that Plaintiff cannot establish her prima facie case because she has not suffered an adverse employment action, or something affecting her "compensation, terms, conditions, or privileges of employment."  See 42 U.S.C. § 2000e-2(a)(1).  It is true that Plaintiff has not been terminated, demoted, disciplined, or had her salary reduced.  Nor did Defendant Phillips ever rate her less than "fully competent" in her annual performance evaluations.  Nevertheless, Plaintiff alleges four incidents[6] of

---

[6] Plaintiff also alleges gender discrimination through disparate treatment by Defendant Phillips.  For example, Plaintiff contends she was disciplined more harshly than her co-workers over work-related matters such as her cell phone use on the job, not carrying her two-way radio, and mistakes in the log book and in her clearwell level.  However, no formal action was ever taken against Plaintiff on account of her cell phone usage, failure to carry her radio, or the errors in her work.  Plaintiff complains that Defendant Phillips "verbally chastised" her or used a "substantially harsher and intimidating tone" (Pl.'s Resp. to Def. City at 8) with her than he did with her co-workers but never alleged that Defendant Phillips gave her some kind of written warning or otherwise did anything that would result in a significant change in her employment status.  See E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007) (noting in the Tenth Circuit even a written warning constitutes an adverse employment action "'only if it effects a significant change in the plaintiff's employment status'" (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1224 (10th Cir. 2006) (emphasis added)) by "'affect[ing] the likelihood that the plaintiff will be terminated, undermin[ing] the plaintiff's current position, or affect[ing] the plaintiff's future employment opportunities'" (quoting Medina v. Income Support Div. N.M.,

discrimination since February 22, 2009, that interfered with her compensation, all of which she claims took place under circumstances giving rise to discrimination.

First, Plaintiff contends that in 2010 Defendant Phillips refused to allow Plaintiff to receive emergency call-out time even though she had heard that a male employee, Art Ford, had received call-out time the previous year.  (Pl.'s Resp. to Def. City, Ex. 3 at 410-411, 450.)  When Plaintiff asked Defendant Phillips why she could not receive call-out time, he allegedly responded, "I don't know why you don't get it."  (Id., Ex. 3 at 410.)  Plaintiff did not ask any of her other supervisors why she could not have call-out time, nor did she file a complaint or grievance, despite having previously utilized the available grievance procedures.  (Id., Ex. 3 at 411.)  Other than her belief that one employee had received emergency call-out time in a prior year, Plaintiff admits she has no information about who else did or did not receive call-out pay.  (Id., Ex. 3 at 450.)  A memo issued the following year clarifies that City policy is to not pay "emergency overtime" or "call back" time.  (Def. City's Br., Ex. 5 at 5.)  Under these facts, Plaintiff has not raised an inference that Defendant Phillips's denial of emergency call-out time related to her gender.

Plaintiff also alleges that Defendant Phillips filed a false report after Plaintiff suffered an on-the-job injury in March 2010.  Although Plaintiff does not describe her injury, Defendant Phillips explains that Plaintiff submitted a claim after sticking her finger with a staple from a magazine she was reading.  (Reply of Def. Phillips, Dkt. No. 67, at 6.)  In his

---

413 F.3d 1131, 1137 (10th Cir. 2005))).  Thus, because there was no adverse action, Plaintiff's disparate treatment claims are not actionable.

report, Defendant Phillips stated that Plaintiff was on her lunch break when she sustained her injury, which caused the Workers' Compensation Court to initially deny her claim.  After Plaintiff appealed that decision, arguing that she does not have an unpaid lunch break since she is required to be on the clock during her entire shift, the Workers' Compensation Court found in her favor and the City compensated Plaintiff for her injury.  Plaintiff does not allege facts indicating that Defendant Phillips stated she was on her break maliciously or with the intent of causing the Workers' Compensation Court to deny her claim.  Rather than being related to Plaintiff's gender, Defendant Phillips's report that Plaintiff injured herself while on a break mostly likely stems from the fact that she was reading a magazine when the injury occurred.

Next, Plaintiff claims that Defendant Phillips falsified Plaintiff's overtime balance in the overtime equalization records in order to deny her overtime opportunities.  Plaintiff's evidence for this contention mostly consists of her own beliefs[7] and that in 2009 she complained to Jim Crawford, the Plant Manager, about several entries in the equalization records and asked for certain credits to be removed.[8]  (Pl.'s Resp. to Def. City, Ex. 3 at 298-

---

[7] The Tenth Circuit has established that "at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded." Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting Tavery v. United States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994); see also Ney v. City of Hoisington, Kan., 264 F. App'x 678, 681 n.3 (10th Cir. 2008) (affirming that it is a "well-settled premise" that summary judgment affidavits not based on personal knowledge or supported by other portions of the summary judgment record must be disregarded).

[8] It is unclear what action Jim Crawford took in response other than to advise Plaintiff to be more clear with Defendant Phillips when he offered her overtime.  (Pl.'s Resp. to Def. City, Ex. 3 at 298-99.)

99, 397-98, 426.)   Specifically, Plaintiff argued that she should not have been credited overtime on September 13, 2009, when Defendant Phillips attempted to offer her overtime but someone else accepted the opportunity before Plaintiff called back.  (Id., Ex. 3 at 298.) Yet City policy allowed Defendant Phillips to call the next person on the overtime list if Plaintiff had not responded within fifteen (15) minutes.  Plaintiff also relies on an instance in April of 2009 where she contested the addition of four (4) hours to her overtime balance, which Art Ford claimed "at least looked suspicious."  (Id., Ex. 1 at 165-66, Ex. 3 at 298.) However, Plaintiff's claims that Defendant Phillips falsified the overtime equalization records in 2009 were investigated after Plaintiff filed an AFSCME grievance.  The corresponding report, issued after a hearing in early 2010, found that "[t]here is no indication, other than the grievant's personal opinion, that the grievant was not afforded equal opportunities to work overtime."  (Def. City's Br., Ex. 12 at 2.)  Moreover, according to Defendant City, Plaintiff worked the second most overtime hours for calendar year 2009,[9] more than all but one of her male co-workers, belying her assertions that Defendant Phillips denied her overtime on the basis of her gender.[10]  (Id., Ex. 19.)

---

[9] Plaintiff worked the sixth most overtime in 2010 but the third most overtime in 2011. (Def. City's Br., Ex. 19.)  From 2009 through 2011, Plaintiff worked the second highest total number of overtime hours.  (Id., Ex. 7 at 1, Ex. 19.)

[10] Plaintiff's own history of grievances further indicates that if Defendant Phillips falsified the overtime records, he did not do so on account of Plaintiff's gender.  As pointed out by Defendant Phillips, in Plaintiff's complaints of January 7, 2009, and October 19, 2009, Plaintiff accused Defendant Phillips of falsifying the overtime records of "his employees" or "his crew," indicating that he changed the overtime balances of male employees, in addition to Plaintiff's.  (Def. Phillips's Br. at 16 (citing Exs. 7 & 8) (emphasis added)).  Plaintiff admitted in her deposition that she used the word "crew" to refer to "[e]veryone under [Defendant Phillips's]

Finally, Plaintiff argues that Defendant Phillips attempted to block her from serving as acting CPO on account of her gender, as evidenced by the fact that he allowed males with less experience and qualifications to serve more time as acting CPO than Plaintiff.  Other than her own assertions, Plaintiff relies on two pieces of evidence:  first, testimony that Defendant Phillips was upset that she served as acting CPO in October of 2009 and, second, that a male co-worker with less experience and lower licenses worked more acting CPO hours than she did.  (Pl.'s Resp. to Def. City, Ex. 1 at 157-159, Ex. 3 at 290, 395-96.)

In his deposition, Art Ford, a co-worker, testified that one time Defendant Phillips seemed "upset" after finding out that Plaintiff had served as acting CPO during his vacation. (Id., Ex. 1 at 158.)  However, even if Defendant Phillips was "upset," this does not provide evidence of gender bias.  Before leaving for vacation, Defendant Phillips prepared a schedule designating Ford acting CPO for Ford's regular shift in accordance with the Draper Plant's new acting CPO scheduling policy.  (Def. Phillips's Br., Dkt. No. 54, at 15.)  Without Defendant Phillips's knowledge, Jim Crawford changed the schedule.  (Id.)  Given the evidence that Defendant Phillips had a "rigid requirement" that the rules be followed, the fact that Defendant Phillips may have been upset when he discovered the schedule change does not indicate gender discrimination.  (Id. at 21, Ex. 17 at 34, Ex. 18 at 78, 81.)

Plaintiff also argues that the number of hours worked by Ryan Osborn, a male co-worker with less experience and lower licenses, indicates an effort to prevent her from

supervision," both male and female.  (Id. (citing Ex. 16 at 121).)

serving as acting CPO because of her gender.  Plaintiff is correct that Ryan Osborn[11] worked more hours as acting CPO than she did in 2009 and 2010 and that in 2009 Ryan Osborn had only a class C license while Plaintiff had class A and B licenses.  (Def. City's Br., Ex. 19; Pl.'s Resp. to Def. City, Ex. 3 at 318-19.)  However, in scheduling Ryan Osborn to work as acting CPO, Defendant Phillips followed a neutral City policy that required the plant operator already scheduled for the shift to work as acting CPO.  Plaintiff complained that this policy hurt her financially because she qualified for less acting CPO hours than she did before the policy's implementation, but she conceded that the policy was fair because it applied to everyone equitably.  (Def. Phillips's Br., Ex. 16 at 330-31.)  Defendant City also disputes Plaintiff's contention that Defendant Phillips prevented her from working in an acting CPO capacity because of her gender by noting that despite being the only woman at the Draper Plant, she worked the second highest total number of acting CPO hours for calendar years 2009 through 2011.  (Def. City's Br., Ex. 7 at 1-2, Ex. 19.)  Moreover, the evidence indicates that on at least one occasion, Plaintiff actually turned down the opportunity to work as acting CPO.  (Pl.'s Resp. to Def. City, Ex. 3 at 290, 388.)

Because the discrete acts alleged by Plaintiff to constitute gender discrimination in violation of Title VII do not amount to adverse actions and she offers insufficient evidence

---

[11] Ryan Osborn's full name is Patrick Ryan Osborn.  Defendant City's chart detailing the amount of acting CPO hours worked by each employee refers to Ryan Osborn as "Patrick Osborn."  (Def. City's Br., Ex. 19.)

to support her beliefs that the actions were taken on account of her gender, Plaintiff's claim

fails and summary judgment is appropriate for Defendant City.

2.  Gender Discrimination:  Hostile Workplace

In Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986), the Supreme Court

held that "a plaintiff may establish a violation of Title VII by proving that discrimination

based on sex has created a hostile or abusive work environment."  An employer can be held

liable for an individual employee's harassment "on a negligence theory, 'if it knew or should

have known about the conduct and failed to stop it.'"  Bertsch v. Overstock.com, 684 F.3d

1023, 1027 (10th Cir. 2012) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759

(1998)).  Taking "remedial and preventative action 'reasonably calculated to end the

harassment'" will absolve an employer of liability for acts of harassment by its employees.

Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver, 397 F.3d 1300, 1310 (10th Cir.

2005) (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998).

Not all harassment creates an actionable hostile work environment claim under Title

VII.  To bring a claim of gender discrimination based on a hostile work environment,

Plaintiff must establish (1) discrimination on the basis of her gender and (2) that the

discrimination was "sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'"  Penn. State Police v. Suders, 542

U.S. 129, 146-147 (2004) (quoting Meritor Sav. Bank, 477 U.S. at 67); see also Morris v.

City of Colo. Springs, 666 F.3d 654, 663 (10th Cir. 2012).  Gender discrimination by way

of a hostile work environment must be sufficiently severe or[12] pervasive because "Title VII

does not establish 'a general civility code' for the workplace."  Morris, 666 F.3d at 663-64

(quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).  Thus, "the

run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American

workplaces is not the stuff of a Title VII hostile work environment claim."  Id. at 664.[13]

Moreover, to prevail on a hostile work environment action, Plaintiff "'must show that the

environment was both objectively and subjectively hostile or abusive.'"  Id. at 664 (quoting

Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998)) (emphasis added).

Accordingly, the Court looks to the "totality of the circumstances" to determine "the

objective severity of the harassment from the perspective of a reasonable person in the

---

[12] The Supreme Court's use of the disjunctive "or" indicates that the conduct Plaintiff complains of has to be either severe or pervasive, not both, to establish a claim of discrimination based on the infliction of a hostile working environment.  Morris, 666 F.3d at 665.

[13] See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "[a] recurring point in [the Supreme Court's hostile work environment] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'") (citation omitted); Morris, 666 F.3d at 665-68 (concluding evidence of discrimination—flicking plaintiff in the head twice, throwing pericardium tissue at plaintiff in the operating room, yelling at plaintiff and demeaning her work, and making comments to her such as "get your ass in gear"—was insufficiently severe or pervasive to have altered the terms and conditions of plaintiff's employment).  Compare Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1365 (10th Cir. 1997) (finding no hostile work environment from "five separate incidents of allegedly sexually-oriented, offensive comments either directed to [the plaintiff] or made in her presence in a sixteen month period") with Chavez v. New Mexico, 397 F.3d 826, 836 (10th Cir. 2005) (reversing trial court's grant of summary judgment for defendants because of the strong evidence of a hostile work environment:  a supervisor had sexually propositioned a plaintiff in exchange for not issuing a reprimand letter, stood close behind one of the plaintiffs while staring at her lewdly and massaging his genitals, brushed the backside of one of the plaintiffs, called another plaintiff a "fucking bitch," and made a lewd, seductive invitation for a "real experience" to another plaintiff).

plaintiff's position," including "such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks and citations omitted).

Plaintiff identifies three incidents to support her claim of a hostile work environment that are overtly gender-related.  First, Plaintiff alleges that in February of 2009, Defendant Phillips referred to her as a "cunt" when talking to Art Ford.  Art Ford testified that Defendant Phillips said, "[t]he cunt had done it to me again," in reference to Plaintiff reporting him for using his city vehicle to take his wife to lunch.  (Def. Phillips's Br., Ex. 14 at 44-46, 49-50; Pl.'s Resp. to Def. City, Ex. 1 at 154-55.)  Next, Plaintiff points to testimony alleging that Defendant Phillips did not want Diane, a female operator at another plant, to come to the Draper Plant because the Draper Plant already had "one and the other plant should have one too."  (Pl.'s Resp. to Def. City, Ex. 2 at 157.)  Art Ford testified that he interpreted this comment to mean that Defendant Phillips did not like to work with women.  (Id., Ex. 1 at 162-63.)  Finally, Plaintiff testified that Defendant Phillips referred to another woman as a "stupid bitch" in her presence.  (Id., Ex. 2 at 157.)

Isolated incidents of offensive comments will not support a finding of a pervasively hostile work environment.  Morris, 666 F.3d at 666 ("A plaintiff does not make a sufficient showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of . . . sporadic. . . slurs. . . .   Instead, there must be a steady barrage of opprobrious . . . comments." (quoting Chavez, 397 F.3d at 832)).   Neither are such

statements, alone, sufficiently "severe." Id. at 666-67 (noting the distinguishable nature of earlier cases finding isolated incidents severe enough to support a hostile work environment; such incidents involved instances of sexual assault and "especially egregious or extreme" conduct). However, Plaintiff claims that these statements must be viewed in the context of Defendant Phillips's other discriminatory actions.

In Chavez, the Tenth Circuit recognized that "'[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct.'" 397 F.3d at 833 (quoting O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999)). As additional support for her hostile work environment claim, Plaintiff alleges Defendant Phillips disproportionately and disparately criticized her over minor work-related matters, such as her use of Draper Plant facilities, her cell phone usage, and not carrying her radio. Plaintiff also argues that Defendant Phillips was more "harsh" with her when she made work-related mistakes, such as allowing her clearwell level to get too low and accidentally entering information incorrectly in a logbook, and that he encouraged her direct supervisors, the CPOs, to harass her. Plaintiff offers little evidence in support of her allegations other than her own testimony and fails to address the conflicting testimony of other employees at the Draper Plant.[14] However, even disregarding evidence contrary to

---

[14] First, Plaintiff alleges that Defendant Phillips complained to management about her use of the Draper Plant's showers in 2008. However, Plaintiff's CPO at that time, John Henderson, testified that he did not know who had complained about Plaintiff taking too many showers at work, but that he believed it was Sonny Massy, not Defendant Phillips. (Def. Phillips's Br., Ex. 15 at 42-45.) John Henderson also testified that Jim Crawford took the lead in the meeting

Plaintiff's accusations, Plaintiff has not made out a claim of a hostile work environment, as she has not shown that Defendant Phillips discriminated against her <u>because of her gender</u> by creating a work environment so hostile and abusive as to alter the terms, conditions, and privileges of her employment.  Under the totality of the circumstances, summary judgment is appropriate for Defendant City.

---

relating to Plaintiff's use of the showers, not Defendant Phillips.  (<u>Id.</u>)  Next, although Plaintiff claims that "Phillips verbally chastised Plaintiff for her cell phone usage while her male co-workers were never chastised" (Pl.'s Resp. to Def. Phillips, at 2), John Henderson testified that when Defendant Phillips said something about Plaintiff's cell phone usage, Defendant Phillips also told him that he was using his cell phone too much.  (Def. Phillips's Br., Ex. 15 at 50.)  According to John Henderson, after Henderson told Defendant Phillips he was on his cell phone so much because his brother was critically ill, Defendant Phillips responded, "I understand that, but, you know, if I say something to one person, I've got to say something to every person." (<u>Id.</u>)  Another of Plaintiff's CPOs, Thomas Tucker, testified that he did not recall Defendant Phillips ever instructing him to tell Plaintiff to stay off her personal phone while she was at work.  (<u>Id.</u>, Ex. 18 at 35-36.)  Instead, Tucker stated that he believed Defendant Phillips made a general statement to everyone that operators should watch how much they talk on their phones at work, rather than singling Plaintiff out.  (<u>Id.</u>, Ex. 18 at 36-37.)  Plaintiff also alleges that Tucker "recalled that Phillips complained to him about Plaintiff not carrying her two-way radio when other male employees also violated the same policy."  (Pl.'s Resp. to Def. City at 8-9 (<u>citing</u> Pl. Ex. 7 at 85).)  However, Tucker testified that after he had a conversation with Defendant Phillips about not being able to contact Plaintiff because she did not have her radio, Defendant Phillips issued a general memo instructing everyone to carry their radios.  (Def. Phillips's Br., Ex. 18 at 44-45.)  Finally, despite Plaintiff's claim that Defendant "Phillips compelled Plaintiff's supervisors to harass her about her job performance but did not harass them about job performance of her male co-workers" (Pl.'s Resp. to Def. City at 20), two of Plaintiff's CPOs testified that Defendant Phillips gave them normal instructions regarding the supervision of subordinates.  Tucker testified that Defendant Phillips told him to document any problems he had with Plaintiff and to supervise her, since she was his operator, but that there was nothing unusual about that statement, given that it was his duty as CPO to supervise his plant operator, report any problems, and try to correct any deficiencies.  (Def. Phillips's Br., Ex. 18 at 43-44.)  Similarly, John Henderson testified that when he was Plaintiff's CPO Defendant Phillips instructed him to keep a better eye on Plaintiff, his plant operator, but that he would expect that kind of instruction from a Water Operations Supervisor and gave that type of instruction to other CPOs during the nine months he acted as WOS.  (<u>Id.</u>, Ex. 15 at 56.)  Moreover, Henderson testified that Defendant Phillips made the same type of statement to him when he supervised Art Ford, a male plant operator.  (<u>Id.</u>, Ex. 15 at 57-58.)

3. Retaliation

Plaintiff has also asserted a Title VII retaliation claim against Defendant City. Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee who has opposed harassment or discrimination in the workplace. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under McDonnell Douglas, Plaintiff must show: "(1) 'she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." Daniels, 701 F.3d at 638 (quoting Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008)). Defendant City concedes that Plaintiff engaged in protected opposition to discrimination when she filed a charge with the EEOC on December 18, 2009,[15] but denies that Plaintiff suffered a materially adverse action causally related to her discrimination charge.

Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm," or actions that "a reasonable employee would have found . . . materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006). A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal

---

[15] Under Tenth Circuit case law, filing an internal grievance alleging sexual harassment qualifies as protected opposition to discrimination under Title VII. Argo, 452 F.3d at 1202. As Plaintiff points out, Plaintiff filed a grievance in October of 2009. Thus, Plaintiff engaged in protected opposition to discrimination on October 19, 2009, and on December 18, 2009.

quotation marks and citations omitted).  To be actionable, Plaintiff must have suffered an "injury rising to a 'level of seriousness.'"  Daniels, 701 F.3d at 638 (quoting Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1087 (10th Cir. 2007)).  The materiality requirement "separate[s] significant from trivial harms" and prevents employees from using Title VII to impose "'a general civility code for the American workplace.'"  White, 548 U.S. at 68 (quoting Oncale, 523 U.S. at 80).  Courts use an objective standard—the "reasonable employee"—to judge whether an alleged act of retaliation was materially adverse, not a subjective standard "based on a 'plaintiff's personal feelings.'"  Daniels, 701 F.3d at 638 (quoting Semsroth v. City of Wichita, 555 F.3d 1182, 1184 (10th Cir. 2009)).  Although a retaliatory action must be materially adverse, it does not have to be workplace-related or an "ultimate employment decision[]."  White, 548 U.S. at 63-64, 67 (concluding that "Title VII's substantive provision and its antiretaliation provision are not coterminous" and that "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm").

Although Title VII's anti-retaliation provision is broader than its anti-discrimination provision, Plaintiff does not allege additional non-employment-related acts of retaliation. Instead, Plaintiff relies on the same allegedly discriminatory actions set forth in her Title VII gender discrimination action.  The Court has already rejected Plaintiff's contentions regarding call-out time, her worker's compensation claim, her overtime hours, and her acting CPO opportunities.  See supra Part A.1.  Plaintiff makes no effort to describe how these actions were materially adverse, how they stemmed from her protected conduct, or even that

they arose after she engaged in protected opposition to discrimination.[16]  Plaintiff likewise

fails to indicate how the other actions she complains of are "materially adverse" or relate to

her protected conduct.  For example, Defendant Phillips's criticism of Plaintiff for allowing

her clearwell level to get too low occurred in July of 2009, several months before Plaintiff

filed her grievance or EEOC charge.  Additionally, although Plaintiff contends Defendant

Phillips singled her out for using her cell phone at work[17] and not carrying her two-way radio

on account of her gender, she does not allege that he did so to retaliate against her for filing

a grievance or an EEOC charge.[18]  What is more, this type of criticism does not rise to the

---

[16] For example, Plaintiff's complaints with respect to her overtime began in March of 2008, well before Plaintiff complained of gender discrimination in her grievance of October 19, 2009.  Likewise, Plaintiff's complaints regarding her acting CPO time began before she filed her grievance or EEOC charge, as both documents reflect.  Moreover, Plaintiff has alleged no facts indicating that Defendant Phillips's actions with respect to her request for call-out time or her worker's compensation claim were in any manner related to her 2009 grievance or her 2009 EEOC charge.  As pointed out in Part A.1 of this Opinion, Defendant Phillips told Plaintiff he did not know why she could not refuse call-out time and Plaintiff chose not to follow-up with any of her supervisors.  The City issued a memo the following year clarifying that employees were not entitled to compensation for such time.  Also as previously discussed in Part A.1, Defendant Phillips seems to have relied on the fact that Plaintiff was reading a magazine when she was injured—not her gender or the fact that she had filed a grievance or EEOC charge—when stating in his worker's compensation report that she was on break when her injury occurred.

[17] It is unclear whether Defendant Phillips's comments to Plaintiff occurred before or after she filed her grievance on October 19, 2009.  In a portion of Plaintiff's deposition she refers to this happening in 2009, but does not give a more specific time frame.  (Pl.'s Resp. to Def. City, Ex. 3 at 272.)  In another portion of the deposition, counsel asks whether the telephone usage issue occurred before or after Plaintiff filed her grievance.  (Id., Ex. 3 at 400.) Unfortunately, although cited to by Plaintiff in her Response, the next page of the deposition, with Plaintiff's answer to that question, is missing from her exhibits.  (See id. at 8, Ex. 3.)

[18] Neither does Plaintiff actually establish that Defendant Phillips singled her out, as the evidence shows that Defendant Phillips spoke to others about their cell phone usage and issued a general directive to all operators, reminding them to carry their radios.  (Def. Phillips's Br., Ex.

level of seriousness required for an adverse action to be "materially adverse," as required by the Supreme Court.  See, e.g., White, 548 U.S. at 67-70 (holding "normally petty slights, minor annoyances, and simple lack of good manners" not actionable under Title VII anti-retaliation provision because such adverse actions will not deter victims from reporting discrimination).  Accordingly, Plaintiff has not established her prima facie case and summary judgment for Defendant City is appropriate.

## B.  Equal Protection

Count IV of Plaintiff's Complaint alleges that all Defendants "deprived Plaintiff of her constitutional right to equal protection" while "acting under the color of their authority." (Pl.'s Compl. at 6.)  Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983.  Because § 1983 does not provide its own statute of limitations for civil rights claims, the two-year limitations period for injuries to personal rights in Oklahoma applies.  See Alexander v. Oklahoma, 382 F.3d 1206, 1212 n.1 (10th Cir. 2004) (citing 12 Okla. Stat. § 95); Garcia v. Wilson, 731 F.2d 640, 651 (10th Cir. 1984).  Thus, the Court will consider only those events occurring on or after June 7, 2009.

## 1.  Defendant City

Although municipalities can be sued under § 1983, "a municipality cannot be held liable solely because it employs a tortfeasor," or on the basis of the doctrine of respondeat superior.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978); see also

---

15 at 50, Ex. 18 at 35-37, 44-45.)

Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2, 523 F.3d 1219, 1223 (10th

Cir. 2008).  Instead, "'to establish municipal liability, a plaintiff must show 1) the existence

of a municipal policy or custom, and 2) that there is a direct causal link between the policy

or custom and the injury alleged.'"  Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th

Cir. 2010) (quoting Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993), cert.

denied, ___ U.S. ___, 131 S.Ct. 3030 (2011)).  Plaintiff may use any of the following to

establish a municipal policy or custom:

> (1) "a formal regulation or policy statement," (2) an informal custom
> "amoun[ting] to a 'widespread practice that, although not authorized by written
> law or express municipal policy, is so permanent and well settled as to
> constitute a custom or usage with the force of law'"; (3) "the decisions of
> employees with final policymaking authority"; (4) "the ratification by such
> final policymakers of the decisions—and the basis for them—of subordinates
> to whom authority was delegated subject to these policymakers' review and
> approval"; or (5) the "failure to adequately train or supervise employees, so
> long as that failure results from 'deliberate indifference' to the injuries that
> may be caused."

Id. (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189-90 (10th

Cir. 2010) (internal citations omitted)).

Defendant City requests summary judgment on Plaintiff's § 1983 claim on the basis

that such a claim is more properly pursued against Plaintiff's supervisor, not the City,

because the City cannot be held vicariously liable for Defendant Phillips's actions and

Plaintiff has not established a City custom or policy of gender discrimination.  In response,

Plaintiff does not point to a formal City policy of gender discrimination, a widespread

practice of gender discrimination, that Defendant Phillips was an employee with final

decision-making authority, that final policymakers ratified Defendant Phillips's conduct, or that the City failed to train or supervise its employees because of its deliberate indifference to the injuries that could be caused by gender discrimination. Instead, Plaintiff argues that by failing to correct Defendant Phillips's harassment of Plaintiff, Defendant City acquiesced to Defendant Phillips's discrimination, making the City liable. Plaintiff provides no supporting authority[19] for this statement. Moreover, even if acquiescence were sufficient to subject the City to liability, Plaintiff has not alleged facts demonstrating this type of acquiescence. When the City learned that Defendant Phillips, contrary to City policy, was allegedly harassing a female employee on the basis of her gender, it promptly conducted a thorough investigation of Plaintiff's claims. (Def. City's Reply, Dkt. No. 68, at 2-4, Ex. 3.) Accordingly, summary judgment for Defendant City is appropriate on Plaintiff's § 1983 claim.

---

[19] As support for her position, Plaintiff first cites Bristol v. Board of County Commissioners of the County of Clear Creek, 312 F.3d 1213, 1221 (10th Cir. 2002). However, Bristol is distinguishable and not on point. Bristol dealt with the question of what test to apply when a Title VII plaintiff alleges more than one employer. 312 F.3d at 1216-18. The Court held that such a situation called for applications of the joint-employer and single-employer tests, rather than a hybrid test the Tenth Circuit had followed in an earlier case. Id. at 1218. The Court made a passing reference to § 1983 cases from other circuits that suggested a county might be liable for the misdeeds of a sheriff if the sheriff set "official policy" for the county, but in no way indicated that acquiescence alone constituted setting "official policy" or what exactly would constitute acquiescence. Id. at 1221. Plaintiff also relies on Murrell v. School District Number 1, Denver, Colorado, 186 F.3d 1238 (10th Cir. 1999). Murrell contradicts Plaintiff's argument. In Murrell, the plaintiff alleged that the school district was liable for gender discrimination under § 1983 for "failing to take steps to eradicate the hostile environment created by Mr. Doe." 186 F.3d at 1249. The Tenth Circuit disagreed, upholding the district court's dismissal of the plaintiff's § 1983 claim after finding that "acts of sexual harassment by a student directed solely at Ms. Jones do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter." Id. at 1250.

2.  Defendant Phillips

a.  Gender Discrimination

The elements of a discrimination lawsuit are the same whether brought pursuant to § 1983 or Title VII.  See Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991). Under the McDonnell Douglas burden-shifting framework, Plaintiff has the initial burden of establishing a prima facie case of gender-based discrimination, just as with a Title VII action. E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007).  If Plaintiff meets her burden, Defendant must "articulate a legitimate, nondiscriminatory reason for the adverse action." Id.  Plaintiff must then demonstrate "a genuine issue of material fact as to whether [Defendant's] proffered reasons are pretextual."  Id.  Defendant Phillips concedes that Plaintiff is a member of a protected class and therefore challenges only the second and third elements of Plaintiff's prima facie case—adverse employment action and causation.

First, Defendant Phillips argues that Plaintiff has failed to establish her prima facie case because she has not demonstrated that she has suffered an adverse employment action. Plaintiff has not been terminated, demoted, disciplined, or had her salary reduced.  (Def. Phillips's Br., Ex. 16 at 164.)  Nor did Defendant Phillips ever rate Plaintiff less than "fully competent" in her annual performance evaluations.  (Id., Ex. 16 at 81-90.)  Nevertheless, Plaintiff argues that Defendant Phillips took overt employment action against her in two ways: first, by harassing her over minor work-related matters and treating her with hostility, and, second, by denying her the same overtime and acting CPO opportunities as the male

employees, thus decreasing her potential earnings.  (Pl.'s Resp. to Def. Phillips, Dkt. No. 65, at 1-2, 4-7.)

Plaintiff's § 1983 gender discrimination claim against Defendant Phillips fails for the same reasons that the Court laid out in analyzing her Title VII gender discrimination claim against Defendant City.  The Court has already rejected Plaintiff's claims with respect to her overtime and acting CPO opportunities, concluding that the evidence shows that Plaintiff worked more overtime and acting CPO hours than all but one of her male co-workers, rebutting any suggestion of adverse action or gender bias.  See supra part A.1.  Moreover, the statute of limitations bars this Court from considering many of the actions Plaintiff suggests constitute actionable harassment.[20]  Those remaining—instructing Plaintiff's supervisors to monitor her work and report any errors, directing Plaintiff to carry her two-way radio at all times, and singling Plaintiff out for her cell phone use[21]—even if true, are not the type of adverse action that gender discrimination laws are meant to address.  See White, 548 U.S. at 67-70.  Accordingly, Defendant Phillips is entitled to summary judgment.

---

[20] Many of the actions Plaintiff complains of took place in 2008:  "yelling" at Plaintiff for leaving a polymer valve open, "screaming" at Plaintiff's CPO about Plaintiff's showering at work, and accusing Plaintiff of falsifying entries in the Draper Plant's "log books" after Plaintiff made a mistake in her entries.  (Def. Phillips's Br. at 10-11 n.3 (citing Ex. 15 at 40-45, 58-59, 134-35; Ex. 16 at 151-56, 225, 230, 271-72, 281-82).)

[21] Defendant Phillips denies that he singled out Plaintiff for her cell phone usage or for failing to carry her radio.  (Def. Phillips's Br. at 12-13 (citing Ex. 11; Ex. 15 at 49-50; Ex. 18 at 35-37, 40, 44-45).)  Defendant Phillips also presented testimony from Tucker, Plaintiff's CPO, that Defendant Phillips had instructed him to monitor the performance of his prior male plant operator in the same way that Defendant Phillips told him to monitor Plaintiff's performance.  (Id. at 12 (citing Ex. 18 at 95-98).)

b.  Retaliation

Plaintiff has also asserted a retaliation claim against Defendant Phillips.[22]  To establish

a prima facie case of retaliation under McDonnell Douglas, Plaintiff must show:  "(1) she

engaged in protected opposition to . . . discrimination; (2) she suffered an adverse

employment action; and (3) there is a causal connection between the protected activity and

the adverse employment action."  Meiners v. Univ. of Kan., 359 F.3d 1222, 1229 (10th Cir.

2004).  Defendant again argues that Plaintiff has not established a prima facie case because

she has not demonstrated that Defendant Phillips took a materially adverse action against her

with respect to her employment.  Although the Court rejects Defendant's contention that

Plaintiff did not suffer an adverse action simply because Defendant Phillips did not

terminate, demote, or discipline her, Plaintiff's § 1983 claim against Defendant Phillips fails

for the same reasons set forth by this Court in analyzing Plaintiff's Title VII retaliation claim

---

[22] Defendant argues that under Starrett v. Wadley, 876 F.2d 808 (10th Cir. 1989), Plaintiff's claim for retaliation is not legally cognizable under § 1983 because it is predicated on an asserted Fourteenth Amendment violation.  Defendant acknowledges that this Court has previously reached a different conclusion but asks this Court to re-examine its interpretation of Starrett.  See Harman v. Okla. ex rel. N. Okla. Bd. of Regents, Case No. CIV-07-327-C, 2007 WL 1674205, *5 (W.D. Okla. June 7, 2007).  In Harman, the Court found that "the notion that retaliation claims that are linked to gender constitute part of an equal protection gender discrimination claim is not novel."  Id.  Although in Starrett the Tenth Circuit held "that a right created solely under Title VII"—such as the right to be free from retaliation for filing a Title VII discrimination charge—"cannot serve as the basis for an independent remedy under Section 1893," the Court went on to find that principle inapplicable, given that the plaintiff's claim alleged more than a violation of Title VII, instead resting on violations of the First and Fourteenth Amendments.  Starrett, 876 F.2d at 813-14.  Relying on this language from Starrett, this Court in Harman found that because the plaintiff alleged gender discrimination and retaliation in violation of the Fourteenth Amendment, the plaintiff's claims were not "'pure' retaliation claims," capable of being brought only under Title VII.  Harman, 2007 WL 1674205 at *5.  Because the Court finds its reasoning in Harman still sound, it declines to re-interpret Starrett and adopt the position advocated for by Defendant.

against Defendant City.  See supra Part A.3.  Plaintiff has not demonstrated that she suffered a materially adverse action.  Out of those actions put forward, Plaintiff has not shown any retaliatory motive, whether by temporal proximity or otherwise.  Thus, summary judgment for Defendant Phillips is appropriate.

## C.  Equal Pay Act

Count V of Plaintiff's Complaint alleges a violation of the Equal Pay Act ("EPA") based on the fact that "Defendants paid other male co-workers more than what they paid Plaintiff notwithstanding that the male co-workers had jobs substantially equal to Plaintiff's job." (Pl.'s Compl. at 6.)  Claims brought pursuant to the Equal Pay Act are subject to a two-year statute of limitations, meaning the Court will only look at actions of the Defendants taking place on or after June 7, 2009.  See 42 U.S.C. § 255.  For claims based upon the EPA, Plaintiff has the initial burden of "demonstrating that employees of the opposite sex were paid differently for performing substantially equal work."  Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1311 (10th Cir. 2006).  If Plaintiff establishes a prima facie case of discrimination, Defendant City and Defendant Phillips will have the burden of persuasion and must "prove that the wage disparity was justified by one of four permissible reasons." Id.

Plaintiff has not satisfied her initial burden by providing evidence she received less pay than the City's male employees who performed substantially equal work.  For all time relevant to this action, a controlling collective bargaining agreement has determined Plaintiff's base rate of pay.  Plaintiff receives the top pay authorized by the collective

bargaining agreement for a plant operator; no plant operator receives a higher rate of pay than Plaintiff. The only times male employees received a higher rate of pay, the City made a determination that the employee in question had been overpaid and required that employee to repay the extra income to the City. Plaintiff argues in response that the EPA covers more than just wage disparity claims. According to Plaintiff, the EPA also provides a remedy to workers denied the <u>opportunity</u> to earn additional income, such as by working overtime or serving as acting CPO, because of their gender. However, Plaintiff's misinterprets the Equal Pay Act. The EPA addresses gender-based disparities in pay for work <u>performed</u>, not disparities in <u>opportunity</u>. Accordingly, both Defendants are entitled to summary judgment on this claim.

D.  Tort Claims

1.  Defendant City

Plaintiff asserted two negligence claims in her Complaint against Defendant City: (1) infliction of emotional distress[23] and (2) negligent supervision, training, and retention. (Pl.'s Comp. at 7-8.)  Because the City is a political subdivision of the State of Oklahoma, <u>see</u> 51 Okla. Stat. § 152(11)(a), tort claims against the City must be brought pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 Okla. Stat. § 151, et seq.  The

_____

[23] In an earlier Order, this Court found that Plaintiff asserted a claim of negligent infliction of emotional distress, rather than an intentional tort. (Order of Jan. 24, 2012, Dkt. No. 32, at 5.)  Under Oklahoma law, negligent infliction of emotional distress "'is not an independent tort, but is in effect the tort of negligence.'"  <u>Chenoweth v. City of Miami</u>, 2010 OK CIV APP 91, ¶ 13, 240 P.3d 1080, 1083 (<u>quoting</u> <u>Lockhart v. Loosen</u>, 1997 OK 103, ¶ 16, 943 P.2d 1074, 1081).

GTCA provides that claims must be brought and notice must be given within one (1) year of the date the loss occurs.  51 Okla. Stat. § 156(B); see also Slawson v. Bd. of Cnty. Comm'rs of Logan Cnty., 2012 OK 87, ¶ 6, 288 P.3d 533, 534.  Plaintiff filed her Notice of Tort Claim on April 28, 2011 (Pl.'s Compl. at 2.)  Thus, in evaluating Plaintiff's negligence claims, the Court will only consider events occurring on or after April 28, 2010.

a.  Negligent Infliction of Emotional Distress

Plaintiff bases her negligent infliction of emotional distress claim on Defendant City's failure to intervene and protect Plaintiff from Defendant Phillips's conduct that was "outrageous in the extreme."  (Pl.'s Resp. to Def. City at 28.)  To prevail on a negligent infliction of emotional distress claim, Plaintiff must prove:  (1) a duty on the part of the City to protect Plaintiff from injury; (2) the City's failure to perform that duty; and (3) that Plaintiff suffered an injury as a result of Defendant's failure.  Chenoweth, 2010 OK CIV APP 91, ¶ 14, 240 P.3d at 1083 (citing Kraszewski v. Baptist Med. Ctr. of Okla., Inc., 1996 OK 141, ¶ 1, 916 P.2d 241, 243 n.1).  Oklahoma law permits Plaintiff to recover for mental anguish only upon proper proof that the anguish either "is caused by physical suffering" or "inflicts physical suffering."  Ellington v. Coca Cola Bottling Co. of Tulsa, Inc., 1986 OK 11, ¶ 8, 717 P.2d 109, 111; see also Roberts v. Langston Univ., Case No. CIV-10-1378-C, 2011 WL 1194673 at *2 (W.D. Okla. Mar. 30, 2011).[24]

---

[24] Plaintiff contends that she "does not have to establish she suffered physical injury to support her emotional distress claim nor invasion of other interest."  (Pl.'s Resp. to Def. City at 28.)  However, as support, Plaintiff incorrectly relies on a case involving intentional infliction of emotional distress, not negligent infliction of emotional distress.  See Williams v. Lee Way Motor Freight, Inc., 1984 OK 64, 688 P.2d 1294, 1296-97.

Defendant first seeks to dismiss Plaintiff's negligent infliction claim under the GTCA. Defendant City argues that if Defendant Phillips harassed Plaintiff, he acted in bad faith, outside the scope of his employment.[25]  (Def. City's Br. at 21.)  The GTCA provides that the City "shall not be liable . . . for any act or omission of an employee acting outside the scope of his employment."  51 Okla. Stat. § 153(A).  However, in a prior discrimination case alleging negligent infliction of emotional distress, this Court recognized that "[b]y definition, negligence claims are based on a lack of malicious or willful conduct and thus there is no allegation that the actor was acting in bad faith."  Roberts, 2011 WL 1194673 at *2.  Thus, "[b]ecause Plaintiff's claim for relief, by definition, precludes malicious or bad faith conduct, the alleged wrongs of the individual Defendants necessarily occurred within the scope of their employment."  Id.  Accordingly, the GTCA does not bar Plaintiff's claim against the City.

Defendant City next argues that Plaintiff's claim must fail because she did not allege a physical injury, as required by Ellington.  (Def. City's Br. at 23-24.)  However, Plaintiff alleged that she "suffered from migraines and stress that affected her work and her ability to sleep" and "also broke her molar because of her grinding her teeth due to the stress of work." (Pl.'s Resp. to Def. City at 28.)  Although Defendant City attempts to refute Plaintiff's testimony about her broken molar (Def. City's Br. at 24), Plaintiff still has testified that she

---

[25] The GTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority."  51 Okla. Stat. § 152(12).

has suffered migraines, trouble sleeping, and grinding her teeth, all physical manifestations of emotional distress.  The Tenth Circuit has recognized difficulty sleeping, crying, and weight gain as evidence of physical harm in a negligent infliction of emotional distress case. Wilson v. Muckala, 303 F.3d 1207, 1213 (10th Cir. 2002).  Plaintiff's alleged physical harm is likewise sufficient for summary judgment purposes.

Alternatively, Defendant City maintains that if Plaintiff alleged a physical injury, the exclusivity provision of the Oklahoma Workers' Compensation Act, 85 Okla. Stat. § 302(A), bars Plaintiff's negligent infliction claim.   Section 302(A) provides:   "[t]he liability prescribed in this act shall be exclusive and in place of all other liability of the employer and any of his or her employees, at common law or otherwise, for such injury . . . to the employee . . . except in the case of an intentional tort."  In a recent case in the Northern District of Oklahoma, the Court held that the plaintiff's emotional distress and digestive problems resulting from his termination arose out of his employment, meaning the exclusivity provision of the Oklahoma Workers' Compensation Act barred his claim for negligent infliction of emotional distress.    Amin v. Flightsafety Int'l, Inc., Case No. 06-CV-568-GKF-PJC, 2009 WL 4729946, at *4-5 (N.D. Okla. Dec. 2, 2009) ("In this case there is quite plainly a connection between plaintiff's termination and the alleged physical injury—stomach discomfort. . . . Therefore, as a separate and alternative ground for summary adjudication, the court concludes plaintiff's negligence claim for physical injuries is barred by the exclusivity provision of the Oklahoma Workers' Compensation Act.").  Likewise, the Tenth Circuit affirmed the reliance of the Utah District Court on the Utah Worker's

32

Compensation Act in dismissing the plaintiff's claim for negligent infliction of emotional distress as manifested in the worsening of his heart condition after his discharge.  Gephart v. Delmed, Inc., ___ F. App'x ___, Case No. 90-4190, 1992 WL 372380, at *2-3 (Tenth Cir. Dec. 10, 1992).  This Court agrees with the reasoning of Amin and Gephart and concludes that the exclusivity provision in Oklahoma's workers' compensation statutes bars Plaintiff's negligent infliction of emotional distress.[26]

b.  Negligent Training and Retention

In Count VII of her Complaint, Plaintiff alleges that Defendant City breached its duty "to properly supervise and train its employees to refrain from engaging in . . . gender harassment, discrimination, and retaliation."  (Pl.'s Compl. at 8.)  Oklahoma law recognizes the tort of negligent hiring and retention.  N.H. v. Presbyterian Church (U.S.A.), 1999 OK 88, ¶ 20, 998 P.2d 592, 600.  An employer will be held liable if, at the time of the tortious incident, "the employer had reason to believe that the [tortfeasor-employee] would create an undue risk of harm to others."  Employers are only liable if they had "prior knowledge of the [employee's] propensity to commit the very harm for which damages are sought," id., but "knowledge may be imputed to the employer from information obtained by its supervisory employees."  Austin v. Edmond Transit Mgmt.\, Inc., Case No. CIV-12-324-D, 2013 WL 49710, at *6 (W.D. Okla. Jan. 2, 2013).

---

[26] Alternatively, the Court notes that as in Amin, the Court has found that there was no gender discrimination.  See supra Part A.  Thus, as in Amin, "to the extent the defendant had a duty not to discriminate against Plaintiff, that duty was not breached."  2009 WL 4729946 at *4.

Defendant City was aware that Plaintiff had complained of gender discrimination and retaliation as of October 19, 2009, when she filed her union grievance against Defendant Phillips.  However, Plaintiff's assertion– that Defendant City took no action after learning of potential discrimination–is inaccurate.  When Defendant City learned of Plaintiff's claims of gender discrimination, it referred the matter to two investigators who looked into Plaintiff's claims and submitted a thirteen-page report.  (Def. City's Reply at 2-4, Ex. 3.) The investigators' conclusions were that there was insufficient evidence to support Plaintiff's claim that she had been denied overtime opportunities and "insufficient evidence to support any claim of disparate treatment in other aspects of her employment environment."  (Id., Ex. 3 at 12.)  Thus, the investigators recommended no administrative action be taken.  (Id., Ex. 3 at 13.)  Although Plaintiff refers to the City's discrimination investigation as "ineffectual," merely because the investigation came to a conclusion contrary to her position does not mean that her claims were not thoroughly investigated.  Based on the City's investigation into Plaintiff's claims, the City did not breach its duty to Plaintiff and summary judgment is appropriate.

## 2.  Defendant Phillips

Although Plaintiff's Complaint asserted that Count VI "goes against all Defendants," in her response to Defendant's motion Plaintiff states that she "did not allege infliction of emotional distress against Defendant Phillips."  (Pl.'s Resp. to Def. Phillips at 15.)  Thus, Defendant Phillips's Motion for Summary Judgment is granted.

IV. CONCLUSION

Defendant City and Defendant Phillips have established that they are entitled to summary judgment as a matter of law with respect to the claims raised in Plaintiff's Complaint. Accordingly, Motion for Summary Judgment of Defendant, Dennis Phillips (Dkt. No. 53) and Defendant City's Motion for Summary Judgment (Dkt. No. 56) are hereby GRANTED.

IT IS SO ORDERED this 23rd day of January, 2013.

ROBIN J. CAUTHRON
United States District Judge